IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| BILLY RAY SHURLEY, and | * |
| SCOTT and MARY WHITE, | * |
| | * |
| Plaintiffs, | * |
| | * |
| vs. | *   No. 4:07CV00146 SWW |
| | * |
| L & C CONSULTANTS, LLC, | * |
| KENNY LAWRENCE and | * |
| TODD CROSBY, | * |
| | * |
| Defendants. | * |

**Memorandum Opinion and Order**

Billy Ray Shurley and Scott and Marie White, residents of Arkansas, bring this action against defendants, residents of Texas, asserting claims for fraud and sale of unregistered securities in violation of Arkansas law. The matter is before the Court on motion of defendants to dismiss for lack of personal jurisdiction. Plaintiffs responded in opposition to the motion and defendants filed a reply. Having carefully considered the matter, the Court finds that the motion should be denied.

**Background**

According to the complaint, in August 2005, the defendants began soliciting plaintiffs to purchase investment interests in several oil and gas projects. At the time, defendants and their agents were not licensed by or registered with the State of Arkansas to offer and sell securities in Arkansas. Plaintiffs assert defendants provided information regarding the projects that contained false and misleading statements, such as the conservative nature of oil and gas investments and that defendants had the financial ability to carry out the projects as described. Plaintiffs bought

investment interests in several of defendants' projects. Plaintiffs seek damages for defendants' alleged wrongdoing.

Defendants argue dismissal for lack of personal jurisdiction is warranted because they did nothing to initiate contact with plaintiffs, and none of their contacts with plaintiffs are sufficient to support general jurisdiction consistent with the limitations placed upon the Court by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Arkansas' long-arm statute. Plaintiffs contend defendants had significant and sufficient contact with Arkansas to subject themselves to the personal jurisdiction of Arkansas.

**Discussion**

This Court applies a two-part test to the jurisdictional issue. First, whether the forum state's long-arm statute is satisfied, and second, whether the exercise of jurisdiction comports with due process. *Oriental Trading Co. v. Firetti,* 236 F.3d 938, 943 (8th Cir. 2001); *Clune v. Alimak AB,* 233 F.3d 538, 541 (8th Cir. 2000). Arkansas's long-arm statute gives courts personal jurisdiction of all persons and causes of action "to the maximum extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Ark.Code Ann. § 16-4-101. The only issue is whether the exercise of personal jurisdiction in this case comports with due process. *See Anderson v. Dassault Aviation,* 361 F.3d 449 (8th Cir. 2004).

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 216 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940). The defendant's conduct and connection with the forum state must be such that defendant should "reasonably anticipate begin haled into court there."

*Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996). *See also Dakota Industries, Inc. v. Ever Best Ltd.,* 28 F.3d 910, 915 (8th Cir. 1994)(noting that "[s]ufficient contacts exist when an individual's connection with the forum state does not offend traditional notions of fair play and substantial justice and the defendant purposefully avails himself of the privilege of conducting activities within the state, thus invoking the benefits and protections of its laws"). "This 'fair warning' requirement is satisfied if the defendant[s] ha[ve] 'purposefully directed' [their] activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . ."*Oriental Trading Co.,* 236 F.3d at 943 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). The Eighth Circuit has established a five-factor test to determine the sufficiency of a defendant's contacts: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Burlington Industries*, 97 F.3d at 1102. The first three factors are of primary importance. *Id.* The Eighth Circuit has further elaborated on the third factor - the relationship of the cause of action to the contacts - to distinguish between specific jurisdiction, which refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, and general jurisdiction, which refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose and irrespective of the relationship between the cause of action and the contacts. *Id.* at 1102-3.

The plaintiff has the burden to show personal jurisdiction exists. *Burlington Industries,* 97 F.3d at 1102. The plaintiff, however, need only make a *prima facie* showing of jurisdiction. *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 646 (8th Cir. 2003). If the court does not hold

a hearing and instead relies on pleadings and affidavits, as is the case here, the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Dakota Industries,* 946 F.2d at 1387. The Court has carefully considered the matter and finds that plaintiffs have made a *prima facie* showing of personal jurisdiction over defendants.

Defendants assert they did nothing to "purposefully avail" themselves of the privilege of conducting business in Arkansas. They insist that it was solely the unilateral act of plaintiff Shurley which initiated plaintiffs' participation in defendants' projects located in Louisiana and Kentucky. Defendants offer the affidavits of separate defendants Kenny Lawrence and Todd Crosby. Lawrence and Crosby state they own a 50% interest in L & C Consultants, LLC ("L&C"). They say L&C has no office or agent in Arkansas, has never owned, used, or leased any real or personal property in Arkansas, and has never had a telephone listing, post office box, or other mailing address in Arkansas. L&C has not participated in any projects in Arkansas, has no agent for service in Arkansas and is not qualified to do business in Arkansas as a foreign limited liability company, and has never done any advertising in Arkansas. Defs.' Mot. to Dismiss Compl., Lawrence Aff. at ¶¶ 3-4; Defs.' Reply to Pls.' Resp., Crosby Aff. at ¶¶ 3-4.

Lawrence says that his wife's uncle, Steven Paul Perry, a resident of Texas and former resident of Arkansas, contacted him by telephone to say that plaintiff Shurley was interested in seeing some of L & C's oil and gas programs. Based upon this unsolicited call from Steven Paul Perry, Lawrence placed documents on a drilling program in Louisiana in the mail to Shurley. Shurley signed the participation agreement and mailed it back to Lawrence. Later, Shurley's banker, Mary White, contacted Steven Taylor Perry, an employee of L & C, and Steven Paul Perry's son, expressing interest in the Louisiana program. At her request, L & C mailed a package of

information to Mary. Mary and her husband signed a participation agreement and mailed it back to L & C. Lawrence Aff. at ¶¶ 5-7. According to Lawrence, at Shurley's request, Steven Taylor Perry mailed Shurley information on programs in Kentucky, in which Shurley decided to participate. *Id.* at ¶ 8. Lawrence states all agreements between L&C and Shurley and the Whites were closed in Texas, and the projects in which they are participating are located in Louisiana and Kentucky. *Id.* ¶ 9. Crosby's Affidavit affirms Lawrence's statements. Defendants argue they never intended to subject themselves to the jurisdiction of Arkansas courts in connection with these projects and involving contracts made in Texas.

Plaintiffs, however, submit the affidavits of Steven Taylor Perry, Shurley, Mary White, and Steven Paul Perry. Steven Taylor Perry says he began working for L&C in July of 2005 as a sales consultant. He said the individual defendants asked him to place "cold calls" to friends, family, and other individuals whom he knew to be wealthy and might be interested in purchasing investments interests. Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, Ex. A, ¶¶ 3-4. He said he knew Shurley personally and called him in August 2005. Shurley expressed an interest and asked for additional information. Steven Taylor Perry sent him a prospectus on the Patterson Project. *Id.* at ¶ 5. Perry says he then received a phone call from Mary White, asking about the Patterson Project. He says he made his sales pitch and sent her a prospectus. ¶ 6. Steven Taylor Perry said he continued to solicit these plaintiffs on behalf of defendants to purchase more investment interests in other L&C projects, and provided them with updates on the projects in which they had invested. ¶ 8. He said that during the course of his employment at L&C, he was instructed to "cold call" individuals whose information was obtained through various companies who provided oil and gas "leads," individuals who might be potential targets for seeking out investment business. ¶ 9 He said L&C solicited

several individuals residing in Arkansas identified in these "lead" lists. Steven Taylor Perry left the employ of L&C in July of 2006.

Steven Paul Perry disputes Lawrence's assertion that he contacted Lawrence on behalf of Shurley for the purpose of seeking information pertaining to defendants' oil and gas projects. He said it was his son, Steven Taylor Perry, who initiated contact with Shurley in an effort to solicit Shurley's investment. Steven Paul Perry said he talked to Shurley only twice concerning defendants' activities. The first time was in August 2005, shortly after his son had spoken to Shurley. He said Shurley called to ask if he knew anything about L&C, not even realizing Steven Taylor Perry was Steven Paul Perry's son. The second time was in July 2006, when Steven Paul Perry says he called Shurley to express concerns about defendants' operations and project management. Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, Ex. D.

Billy Ray Shurley says he did not initiate contact with defendants regarding purchasing investment interests in defendants' oil and gas projects. He says Steven Taylor Perry, an L&C sales consultant, called him in August 2005, to see if he were interested in investing in one of their projects known as the Patterson Project. He says that based on Perry's strong sales pitch and the information provided, he expressed interest and obtained additional information before making an investment. He consulted with his banker, Mary White, and purchased an interest in the Patterson Project. Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, Ex. B at ¶ 5. Shurley said Perry called him in September 2005, December 2005, and January 2006 about investing in other L&C oil and gas projects, which he did. The solicitations were made over the telephone and Perry sent him prospectuses, providing him with additional information about the projects. ¶¶ 6-8. Shurley said he never contacted Steven Paul Perry in order for him to request solicitation materials from L&C

on Shurley's behalf. He states he called Steven Paul Perry after being contacted in August 2005 by Steven Taylor Perry, and says Steven Paul Perry called him in July 2006 to express concern about L&C.

Mary White says she contacted Steven Taylor Perry in August 2005 to ask him questions about the Patterson Project, after Shurley contacted her seeking her investment advice. Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, Ex. C. While discussing the project with Perry, he asked her if she were interested in investing in the project. She expressed interest in receiving more information, and ended up investing in the Patterson Project herself. Ex. C at ¶ 4-5. White says shortly after her first investment, Steven Taylor Perry called her to see if she were interested in investing in another oil and gas project. Based on the information provided by Perry, and after discussing it with her husband, she and her husband purchased an interest in another project. *Id.* at ¶ 6. She says she continued to be solicited by defendants who routinely sent her information on other projects. The solicitation efforts occurred by e-mail, and by telephone, and were primarily initiated by defendants. *Id.* at ¶ 8. After Perry resigned from L&C, another person from L&C became her contact. He provided updates and also continued to solicit her business. She disputes Lawrence's assertion that no representative of L&C traveled to Arkansas in connection with the subject transactions. White states that in the Spring of 2006, Perry contacted her and told her he was going to be in Arkansas seeing other clients. She and Perry had lunch at a restaurant in Arkansas, at which time he provided updates and information about other L& C projects.

"Minimum contacts are established if a 'defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' the activities.'" *St. Jude Medical, Inc. v. Lifecare Inter'l, Inc.,* 250 F.3d 587, 591 (8th Cir. 2001).

Viewing the evidence in the light most favorable to plaintiffs and resolving all factual conflicts in their favor, the Court finds plaintiffs have made a *prima facie* showing of personal jurisdiction over defendants. There is evidence that defendants initiated contact with Arkansas residents and aggressively pursued a business relationship with plaintiffs and other residents of Arkansas through the use of purchased marketing lists and "cold calls." Through those contacts, defendants allegedly defrauded plaintiffs and violated Arkansas state securities laws.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motion to dismiss for lack of personal jurisdiction [docket entry 14] should be and is hereby denied. Defendants are directed to file a responsive pleading within 20 days from the date of entry of this Order.

SO ORDERED this 16th day of July 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE