IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| BILLY RAY SHURLEY, and | * | |
| SCOTT and MARY WHITE, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | No. 4:07CV00146 SWW |
| | * | |
| L & C CONSULTANTS, LLC, | * | |
| KENNY LAWRENCE, TODD CROSBY, | * | |
| and DWIGHT BREHM, | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

This action was filed by the plaintiffs who invested in oil and gas projects offered and sold by defendants. The complaint alleges defendants sold unregistered nonexempt securities, committed fraud or deceit in connection with the offer and sale of securities, and failed to register as agents, all in violation of the Arkansas Securities Act, and perpetuated common law fraud on plaintiffs.

Now before the Court are several motions that are ripe for determination: a motion to dismiss filed by separate defendant Dwight Brehm; a motion for partial summary judgment filed by plaintiffs; and a motion to compel filed by separate defendants L&C Consultants, LLC; Kenny Lawrence; and Todd Crosby.[1]

**1.    Motion to Dismiss filed by Dwight Brehm**

Plaintiffs, residents of Arkansas, originally sued L&C Consultants, LLC ("L&C"), a Texas

---
[1] Also before the Court is plaintiffs' motion to withdraw their motion to compel.

company, and its two co-founders, Kenny Lawrence and Todd Crosby, in connection with certain oil and gas projects located in Louisiana, Oklahoma, and Kentucky. Plaintiffs base their claims on alleged misrepresentations and omissions allegedly made by defendants while soliciting plaintiffs to make investments in these projects. On January 4, 2008, plaintiffs amended their complaint by adding Dwight Brehm, a Texas resident, as a defendant in the lawsuit. According to the amended complaint, Brehm "was at all relevant times Manager of Oil and Gas Operations of L & C Consultants" and was listed as such in the offering documents, specifically the Company Profile, circulated to potential investors, including plaintiffs. Second Am. Compl., ¶ 9. Plaintiffs allege Brehm was also the Oil and Gas Manager for Energy Recovery Group LLC ("ERG"), and from time to time they received correspondence signed by Brehm providing "Executive Summaries" of various projects. *Id.* ¶ 34-35. According to plaintiffs, ERG is the company in charge of the drilling, completion, and production operations in many of the defendants' projects, including the Patterson project in which plaintiffs invested. *Id.* at 32.

Brehm admits he was a co-founder and the Manager of Oil and Gas Operations of ERG, a Texas company, but insists he was not the manager of L&C's oil and gas operations. He admits he prepared executive summaries and provided those summaries to L&C, but says he never sent the summaries to plaintiffs. He moves the Court to dismiss plaintiffs' claims against him on the basis of lack of personal jurisdiction, failure to state a claim for relief, and failure to adequately plead fraud.

    a.    **Dismissal Pursuant to Fed.R.Civ.P. 12(b)(2)**

Brehm argues the Court lacks jurisdiction because he has never had contacts with the state of Arkansas sufficient for the Court to exercise personal jurisdiction over him. The two-part test

governing the jurisdictional issue is first, whether the forum state's long-arm statute is satisfied, and second, whether the exercise of jurisdiction comports with due process. *Oriental Trading Co. v. Firetti,* 236 F.3d 938, 943 (8th Cir. 2001); *Clune v. Alimak AB,* 233 F.3d 538, 541 (8th Cir. 2000). Because Arkansas's long-arm statute gives courts personal jurisdiction of all persons and causes of action "to the maximum extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution," Ark.Code Ann. § 16-4-101, the only issue is whether the exercise of personal jurisdiction in this case comports with due process. *See Anderson v. Dassault Aviation,* 361 F.3d 449 (8th Cir. 2004).

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 216 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940).  The defendant's conduct and connection with the forum state must be such that defendant should "reasonably anticipate begin haled into court there." *Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996). "This 'fair warning' requirement is satisfied if the defendant[s] ha[ve] 'purposefully directed' [their] activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . ."*Oriental Trading Co.,* 236 F.3d at 943 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). The Eighth Circuit has established a five-factor test to determine the sufficiency of a defendant's contacts: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Burlington Industries*, 97 F.3d at 1102.  The first three factors are of primary importance.

*Id.* The Eighth Circuit has further elaborated on the third factor - the relationship of the cause of action to the contacts - to distinguish between specific jurisdiction, which refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, and general jurisdiction, which refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose and irrespective of the relationship between the cause of action and the contacts. *Id.* at 1102-3.

The plaintiff has the burden to show personal jurisdiction exists. *Burlington Industries,* 97 F.3d at 1102. The plaintiff, however, need only make a *prima facie* showing of jurisdiction. *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 646 (8th Cir. 2003). If the court does not hold a hearing and instead relies on pleadings and affidavits, as is the case here, the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Dakota Industries,* 946 F.2d at 1387.

Brehm asserts he has never solicited business from any corporate entity or individual resident of the state of Arkansas, has never worked in Arkansas, paid taxes in Arkansas, or been educated by any institutions in Arkansas. He has never owned or leased any real or personal property in Arkansas, and has never had any agents, employees, family members, friends, acquaintances, offices or bank accounts in Arkansas. Brehm states he never personally met any of the plaintiffs nor has he solicited their participation or any other Arkansas resident's participation in the projects at issue in this case or any other oil and gas project.

Brehm disputes plaintiffs' allegation that he is the Manager of Oil and Gas Operations for L&C. He states he was a co-founder and Manager of Oil and Gas Operations of ERG, which specialized in the acquisition and maximization of under-developed and under-maintained oil and

gas properties. As manager of oil and gas operations for ERG, Brehm says he was primarily responsible for all aspects of geology, land, and drilling operations relating to the Patterson and Rich Valley North projects, two of the oil and gas projects at issue in this lawsuit. He states ERG funded the development of the Patterson and Rich Valley North projects, in part with capital contributed by L&C. Brehm says he was not involved with the other projects mentioned in the complaint, and never solicited any oil and gas investors on L&C's behalf. Brehm argues there is no evidence he has "continuous and systematic contacts" with Arkansas such that this Court may exercise general jurisdiction over him, and there is no evidence to support specific jurisdiction because plaintiffs' causes of action cannot "relate to" or "arise out of" his actions or contacts in the state of Arkansas because he had none.

In support of their response to Brehm's motion to dismiss for lack of personal jurisdiction, plaintiffs submit a copy of a Company Profile which lists Brehm as L&C's Manager of Oil and Gas Operations for L&C. *See* Pls.' Br. in Supp. of Resp., Ex. C. Although Brehm asserts he was not involved in L&C's fund-raising efforts, he admits he provided L&C material related to the projects, particularly the Executive Summaries that plaintiffs allege L&C used in the sales pitches to potential investors. Further, a former L&C salesperson, Steven Taylor Perry, testified that Brehm gave the L&C salespersons information packets or "books" for them to use during the solicitation process and continually updated them on the status of the well projects so they could inform investors. Perry said that when Lawrence and Crosby could not answer technical questions about the oil and gas projects, they would have Brehm come in to answer questions, and Perry would rely on the information provided by Brehm to solicit investments in those projects. Pl's. Resp. to Mot. Dismiss, Ex. A, Part 1, Perry Dep. at 44. Perry testified Brehm was the operator of the Patterson project, *id.*

at 45, and he relied on information provided by Brehm to promote that project. *Id.* at 46. L&C raised millions of dollars for the Patterson project. *Id.*, Ex. A at 35-36. Plaintiffs argue the evidence is clear that Brehm affiliated with Lawrence and Crosby to solicit investments in his oil and gas projects from residents of the state of Arkansas.

"Minimum contacts are established if a 'defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' the activities.'" *St. Jude Medical, Inc. v. Lifecare Inter'l, Inc.,* 250 F.3d 587, 591 (8th Cir. 2001). Viewing the evidence in the light most favorable to plaintiffs and resolving all factual conflicts in their favor, the Court finds plaintiffs have made a *prima facie* showing of personal jurisdiction over Brehm. There is evidence that Brehm was aware of L&C's marketing activities and provided technical information to the sales persons for their use in soliciting investors. He came to the L&C office to update salespersons with technical information and provided L&C with Executive Summaries upon which plaintiffs claim they relied when making their investment decisions. Although the majority if not all of Brehm's actions may have been carried out in Texas, they were nonetheless "performed for the very purpose of having their consequences felt in the forum state." *Calder v. Jones,* 465 U.S. 783, 789 (1984). Thus, the Court finds the motion to dismiss for lack of personal jurisdiction should be denied.

   **b.**  **Dismissal Pursuant to Fed.R.Civ.P. 12(b)(6)**

In Counts I and IV, plaintiffs allege defendants violated the Arkansas Securities Act by selling unregistered securities and failing to register as agents with the Arkansas Securities Department. They allege Brehm may be held jointly and severally liable for L&C's violations of the Arkansas Securities Act because he was a "member[] and/or manager[], officer[], and control

person[] of Defendant L&C Consultants and materially participated and/or aided in the sale of these securities." Second Am. Compl. at ¶ ¶ 45 and 71. Brehm argues plaintiffs fail to plead any facts in support of their conclusion that he was a member, manager, officer, or control person of L&C or that he was otherwise affiliated with L&C or took part in L&C's alleged solicitation of plaintiffs.

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). The complaint should be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed if there are pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 467 (D.C.Cir. 1991). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims, irrespective of a judge's disbelief of a complaint's factual allegations or a judge's belief that the plaintiff cannot prove what the complaint asserts. *Id. See also Twombly*, 127 S.Ct. at 1965 (a well-pleaded complaint may proceed even if it appears that actual proof of those facts is improbable and that recovery is very remote and unlikely). A complaint cannot, however, simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 1968. Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible." *Id.* at 1974.

Reviewing the facts in a light most favorable to plaintiffs, the Court finds they are sufficient

to state a claim for relief against Brehm. Therefore, his motion to dismiss for failure to state a claim is denied.

### c. Dismissal Pursuant to Fed.R.Civ.P. 9(b)

Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

> This particularity requirement demands a higher degree of notice than that required for other claims. The claim must identify who, what, when, and how. Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.

*United States ex re. Costner v. United States,* 317 F.3d 883, 888 (8th Cir. 2003).

Brehm argues plaintiffs fail to allege with any particularity the fraudulent or deceitful conduct they contend he engaged in, where and when this conduct occurred, the contents of any fraudulent statements or misrepresentations made by Brehm or what Brehm obtained as a result of this alleged fraud. He argues that the only specific facts pleaded relating to him are the assertions that plaintiffs obtained executive summaries authored by Brehm, that those summaries induced plaintiffs to invest with L&C, and defendants knew "that the aforementioned statements and misrepresentations were false and misleading." Second Am. Compl. ¶¶ 35-36. Brehm complains that plaintiffs fail to specifically identify who provided them with copies of the executive summaries, when they received the executive summaries, how they received them, and what statements or representations in these executive summaries were false or misleading.

Plaintiffs argue the complaint identifies Brehm as the person who provided material information in the offering documents concerning the operations of and expectations for the oil and

gas projects, alleges the materials were sent to plaintiffs at their homes in Arkansas beginning in August 2005 and continuing thereafter, specifically October 5, 2006, and the material was sent through the mail and by telephone calls through the executive summaries provided by Brehm on the status of the projects. Plaintiffs allege defendants falsely represented the conservative nature of the oil and gas investments and that they had the financial wherewithal to successfully carry out the projects as described. Plaintiffs allege defendants misrepresented the heightened economic potential associated with the projects, including falsely representing conservative return projections that investors could expect to receive and knowingly misrepresenting important aspects of their projects, including what types of well were to be drilled. Plaintiffs also allege defendants provided false information concerning the status of the various projects' operations. Second Am. Compl. ¶¶ 2-3. Other paragraphs of the complaint allege defendants "falsely represented that the well to be drilled would be permitted and subsequently drilled as a "new entry" or "twin well," when plaintiffs investigation revealed the well was permitted and drilled as a "re-entry" of a capped and abandoned sister well located in the same formation. *Id.* at ¶ 24. Plaintiffs allege defendants saved a considerable amount of money in pursuing re-entry of the capped and abandoned sister well thus misrepresenting that a large up-front investment was required due to the fact that the Patterson project called for a new entry well to be drilled. *Id.* at ¶ 25. Plaintiffs also allege defendants misrepresented the various timetables and scheduling associated with their projects, including when the appropriate permits and leases were to be procured, when drilling was to take place, and when plaintiffs could expect to see returns from their investments. *Id.* at ¶ 27. Further, plaintiffs allege defendants misrepresented that ERG was in sound financial condition and capable of completing the projects professionally and expeditiously when the facts are that ERG is in involuntary bankruptcy.

*Id.* ¶¶ 32-33. "The degree of particularity required to comply with Rule 9(b) varies from case to case: The sufficiency of a pleading under Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *McDonnell Douglas Corp. v. SCI Technology, Inc.,* 933 F.Supp. 822, 825 (E.D.Mo. 1996). The Court finds that when read in conjunction with the principles of notice pleading, and given the context in which the fraud is alleged to have occurred, the complaint meet the requirements of Rule 9(b).

**2.      Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs move for summary judgment on their claims under the Arkansas Securities Act that defendants L&C, Lawrence, and Crosby sold unregistered securities and that they were unregistered agents. Defendants contend there is a genuine issue of material fact as to whether the participation agreements at issue are "securities" as that term is defined by Arkansas law, and as to whether the Rich Valley North Project was a project of L&C or of ERG. Further, defendants contend there is evidence of the applicability of laches and estoppel to bar the remedy of rescission, but plaintiffs failed to produce relevant discovery documents requested by defendants.

The Arkansas Securities Act provides it is unlawful to offer or sell any security in the state unless it is registered under the Act or is exempt from registration. Ark. Code Ann. § 23-42-501. Upon the showing of a sale of a security, it is the burden of the seller to show that the security was registered or that it was exempt from registration. Ark. Code Ann. § 23-42-506; *McMullan v. Molnaird,* 749 S.W.2d 352, 353 (Ark. App. 1988). The Act defines a "security" as including a "[c]ertificate of interest or participation in an oil, gas, or mining title or lease or in payments out of

production under such a title or lease." Ark. Code Ann. § 23-42-102(15)(A)(xvi). A fractional percentage of a working interest in an oil lease is a security. *Hogg v. Jerry,* 773 S.W.2d 84, 86 (Ark. 1989).

The Participation Agreements signed by plaintiffs include the following statement: "Participant [Plaintiff] desires to acquire an undivided interest in a portion of the [oil and gas] Leases . . . " *See* Pls.' Mem. of Law in Supp. Mot. Partial Summ. J., Exs. E, F, G, and H. Plaintiffs argue that under the plain language of the statute and the agreements, plaintiffs' purchases meet the definition of a security. In response, defendants contend there is an issue of fact as to whether the participation agreements at issue are "certificates" as the term is used in the statute. Plaintiffs further argue that even if the investment interests are not readily identifiable as securities under the statute, they meet a five-factor test for determining whether what plaintiffs purchased were securities. Defendants do not address this argument in their response.

> There are five significant common factors of traditional securities: 1) the investment of money or money's worth; 2) investment in a venture; 3) the expectation of some benefit to the investor as a result of the investment; 4) contribution towards the risk capital of the venture; and 5) the absence of direct control over the investment or policy decisions concerning the venture, and the definition of what constitutes a security must necessarily depend on an analysis of all of the factors in any given transaction.

*Cook v. Wills,* 808 S.W.2d 758, 761 (Ark. 1991).

Plaintiff Shurley invested $553,562.50 in L&C oil and gas projects, and plaintiffs Scott and Mary White invested a total of $32,000.00. Pls.'Statement of Undisputed Material Facts, ¶¶ 1- 2. Plaintiffs' investments were to be used for drilling, testing, completing, and equipping the project wells in exchange for a percentage working interest. *Id.* at ¶ 13. According to the terms of the agreement, before plaintiffs received any revenue from their interests, royalties and other expenses

were deducted. Pls'. Mem. in Supp. Mot. Partial Summ. J., Exs. E, F, G, and H. Clearly, plaintiffs invested money in a venture.

Plaintiffs expected that they would receive a profit from their purchase of investment interests in L&C projects. *See* Pls.' Statement of Undisputed Facts, ¶ 12. For example, ERG's Executive Summary indicated that the anticipated return on the Rich Valley North Project was 4 to $1^2$, *see* Pls.' Mem. in Supp., Ex. I, and plaintiffs received a Cash Flow Projection for the Patterson Project as part of the informational packet. *Id.*, Ex. J. Plaintiffs' investments were to be used to conduct L&C's business. *See* Pls.' Statement of Undisputed Fact, ¶ 13. The evidence is undisputed that Lawrence is the president of L&C and Crosby is the chief executive officer of L&C. Pls.' Statement of Undisputed Facts, ¶¶ 4-5. Lawrence and Crosby developed the sales script to be used by sales agents and supervised and critiqued their calls to potential investors. *Id.* ¶ 9. Plaintiffs relied on Lawrence and Crosby to manage their investments. *Id.*; *see also* Pls.' Mem. in Supp., Ex D at 144. There is no evidence that plaintiffs had control over L&C's decisions or that they intended to actively manage L&C. *See* Pls.' Statement of Undisputed Facts at ¶ 11. The Court finds that defendants fail to come forward with any evidence showing there is a genuine issue of material fact in dispute as to plaintiffs' claims that their investments were securities under the Arkansas Securities Act.

Further, there is no genuine issue of material fact in dispute that defendants L&C, Lawrence, and Crosby are sellers of unregistered securities. It is unlawful for a person to offer or sell any security, unless it is registered, exempt from registration, or is a covered security. Ark. Code Ann.

---

$^2$L&C denies it was a party to the Rich Valley North participation agreements with plaintiff, but says such agreements were between plaintiffs and ERG. *See* Defs.' Br. in Supp. of Resp. to Mot. Partial Summ.J.

§ 23-42-501. "[I]gnorance of a duty to register securities, or to procure their exemption, can in no way excuse the failure to do so." *Robertson v. White,* 635 F.Supp. 851, 868 (W.D.Ark. 1986). Plaintiffs do not need to prove the defendants knowingly and willfully violated the law, only that defendants sold unregistered securities. *Id.* at 867. This is because the Arkansas Securities act "imposes absolute liability on any party who sells an unregistered security." *Id.* at 869. Plaintiffs have the burden of proving that defendants are officers of L&C or that they materially aided the sale of the securities. *Id.* at 870. As previously noted, Lawrence is the president and defendant Crosby is the chief executive officer of L&C, and there is evidence that defendants drafted the sales script to be used by L&C sales agents and plaintiffs relied on them to manage their investments.

A person who controls a seller, or who is a partner, officer, or director of a seller of securities may be found jointly and severally liable with the seller, even without a finding of material aid in the sale. *Hogg,* 773 S.W.2d at 87. For fractional undivided interests in oil rights, an "issuer" means "the owner of the right or of any whole or fractional interest in the right who creates fractional interests therein for the purpose of the offering." *Id.* at 87; Ark. Code Ann. § 23-42-102(9)(D). In *Hogg*, the fractional interests were not registered as securities, nor was proof of exemption filed with the securities commissioner, and so a violation of the Arkansas Securities Act occurred.

The Court finds plaintiffs are entitled to summary judgment on their claim that defendants are not registered agents and thus violated state securities law. Under the Act, it is unlawful for an issuer such as L&C to employ an unregistered agent. Ark. Code Ann. § 23-42-301(b)(1). Furthermore, at least one individual who has direct supervision over the sale of securities must be registered as an agent. Ark. Code Ann. § 23-42-301(e)(1). Any person who sells a security in violation of these provisions is liable to the purchaser of the security under Ark. Code Ann. § 23-42-

106(a)(1)(A).

An agent is "any . . . individual . . . who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." Ark. Code Ann. § 23-42-102(1)(A). The individuals retained by L&C to solicit potential purchasers of L&C securities were not registered agents or broker-dealers. *See* Pls.' Mem. in Supp., Ex D at 23-24. Additionally, neither Lawrence nor Crosby were registered as agents or dealer-brokers. *See* Pls.' Statement of Undisputed Facts at ¶17. Lawrence and Crosby were the individuals with direct supervision over the sales of securities. *See id.* at ¶ 7.

Plaintiffs move for summary judgment as to their claim for rescission. Defendants assert there is a genuine issue of material fact in dispute as to whether they are entitled to the defenses of estoppel and laches to bar rescission of the agreements, arguing plaintiffs were experienced business people, knowledgeable and highly sophisticated.

Under certain circumstances, a right of rescission for the sale of unregistered securities can be barred under the doctrine of laches and estoppel. In *Schultz v. Rector-Phillips-Morse, Inc.,* 552 S.W.2d 4 (Ark. 1977), the plaintiffs sought rescission of their purchase of joint ventures in a project because the Internal Revenue Service had denied a claimed income tax deduction. The plaintiffs claimed the seller did not register or file an exemption with the Arkansas Securities Department. In denying the purchasers the right of rescission, the court stated:

> Certainly it is not the intention of the Arkansas Securities Act to grant knowledgeable buyers of securities an undue advantage over sellers who are substantially less informed in the field. It was never intended that the securities laws be used as a tool of sophisticated investors to invest in projects or promotional schemes and reap the tax benefits accruing from such ownership, and then have the option several years later to determine whether they want to retain the investment or get their money back with interest while presumably retaining the tax benefits.

552 S.W.2d at 13. Defendants argue that while plaintiffs have not reaped any benefit from their investments through L&C, they are very knowledgeable buyers of securities. Plaintiffs contend that defendants are not entitled to assert the defense of laches because they cannot show any detrimental reliance on their part.

> The question whether the conduct of the purchaser is sufficient to bar the rescission of the sale depends upon the facts in each case. Some of the determinative factors in securities registration cases include: (1) participation in the organization and management of the corporation, (2) acceptance of dividends by the buyer, (3) the buyer's knowledge of the violation at the time of the sale, (4) the reliance of the seller on the buyer's conduct, and (5) the experience and sophistication of the buyer.

*Hogg,* 773 S.W.2d at 86. Defendants argue plaintiffs represented to L&C in writing that they were accredited investors as defined in Regulation D of the Securities and Exchange Commission (net worth of $1,000,000.00 or more or annual income of $200,000.00). *See* Pls.' Mem. of Law in Supp. Mot. Partial Summ. J., Exs. E & F. Defendants assert Shurley is a successful businessman, and Mary White is a registered securities broker who advises Shurley. In response to interrogatories, Mary White said she had the following securities licenses: Series 7 - General Securities Broker License; Series 63 - Blue Sky License; Series 24 - General Principals License; and Series 66 - Registered Investment Advisors License. Defendants argue that White knew or shown have know how to check whether a registration or exemption filing had been made and, as a personal friend of Steven Perry, the L&C representative who made the sales to plaintiffs, and who formerly worked in the same branch bank as White, she likely was aware that he was not a registered securities agent or broker in Arkansas.[3]

---

[3] Defendants further claim that because plaintiffs refuse to comply with their discovery requests, they are unable to obtain documentary evidence supporting their defenses of laches and estoppel. The Court addresses this in defendants' motion to compel.

The Court finds that plaintiffs' motion for partial summary judgment should be denied as to defendants' defenses.

**3.      Motion to Compel Discovery Responses**

Separate defendants L&C, Lawrence, and Crosby filed a motion to compel plaintiffs to respond to certain discovery requests. For the reasons stated below, the motion is granted.

In Interrogatory No. 5, defendants ask plaintiff to describe all the investments they have made or purchased in the last fifteen (15) years, including the issuer of the investment, the date of the investment, and the amount invested. In Request for Production No. 5, defendants ask for each prospectus and each account statement relating to the investments identified in Interrogatory No. 5. Plaintiffs object to the term "describe" as vague and argue that the information sought is irrelevant, unduly burdensome, oppressive, harassing, private and confidential. In Request for Production No. 3, defendants ask plaintiffs to produce any financial statements that they prepared or delivered during the period from January 1, 2005 to date. Plaintiffs object to the terms "financial statements," "prepared," and "delivered" in Request No. 3 as vague and repeat the other objections made to Interrogatory No. 5.   In Request for Production No. 4, defendants ask for copies of plaintiffs' federal and state income tax returns for tax years 2004-2007. Plaintiffs object, stating the request is overbroad, oppressive, and unduly burdensome as well as irrelevant, private and confidential.

Defendants assert that interests in oil and gas programs similar to those at issue in this case are generally offered and sold pursuant to exemptions from registration provided in Sections 3(b) and 4(2) of the Securities Act of 1933, 15 U.S.C. § 77c(b) and 15 U.S.C. § 77d(2), and Regulation D thereunder (17 C.F.R. § 230.501 *et seq*), and corresponding provisions of state securities laws. Under Rule 502(b) of the Securities and Exchange Commission, there are no specific disclosure

requirements for sales of certain exempt securities to accredited investors, which include individuals with a net worth of $1,000,000.00 or more, or a consistent annual income of $200,000.00 or more. 17 C.F.R. § 230.501(a)(5) and (6). Defendants explain that the information they seek is discoverable in order to determine whether the investment interests sold to plaintiffs are exempt from registration due to plaintiffs' net worth or annual income.

Plaintiffs argue this action was not brought under the federal securities laws but instead was brought under the Arkansas Securities Act, which provides it is unlawful to offer or sell any security in Arkansas unless it is registered under the Act or is exempt from registration. Arkansas law provides:

> The commissioner may, from time to time, by his rules, and subject to any terms, conditions, and fees which may be prescribed therein, add any class of securities to the securities exempted as provided in this section if he finds that the enforcement of this chapter with respect to the securities is not necessary in the public interest and for the protection of investors by reason of the small amount involved or the limited character of the public offering, but no issue of securities shall be exempted under this section where the aggregate amount at which the issue is offered to the public exceeds one million dollars ($1,000,000).

Ark. Code Ann. § 23-42-503(b).[4]  Defendants fail to establish that Arkansas has a corresponding rule exempting disclosure requirements for sales to accredited investors. The Court, however, finds that the information sought may lead to admissible evidence as to the applicability of the doctrines of laches and estoppel to bar the remedy of rescission. Therefore, the motion to compel is granted.[5]

### Conclusion

IT IS THEREFORE ORDERED that separate defendant Brehm's motion to dismiss for lack

---

[4]This section is similar to 15 U.S.C. § 77c(b) of the federal Securities Act of 1933.

[5]The parties may determine that the entry of a protective order is necessary or proper. If so, they may submit a joint order to the Court for approval.

of personal jurisdiction [docket entry 61] should be and is hereby denied. His motion for protective order [docket entry 84] is denied. Defendant Brehm has thirty (30) days from the date of entry of this Order in which to respond to plaintiffs' discovery requests. Plaintiffs' motion for partial summary judgment [docket entry 53] is granted in part and denied in part. Separate defendants' motion to compel [docket entry 46] is granted, and plaintiffs' motion to withdraw their motion to compel [docket entry 66] is granted.

SO ORDERED this 8th of July 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE